UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES MILSTEAD | CIVIL ACTION NO.: 09-6301 |
| VERSUS | JUDGE MARTIN L.C. FELDMAN |
| TOTAL WIRELINE SERVICES, INC. | MAG. JUDGE KAREN WELLS ROBY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, State National Insurance Company (hereinafter referred to as "SNIC"), moves this Court for Judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the claims of plaintiff, James Milstead, against defendant, SNIC, with full prejudice, as plaintiff is not a Jones Act seaman

### BACKGROUND

The plaintiff, James Milstead, a temporary worker employed by Total Wireline Services originally filed a seaman's Jones Act suit against his employer on September 15, 2009, alleging unseaworthiness and seeking maintenance and cure. In September 2010, the plaintiff amended his complaint and served a "SECOND SUPPLEMENTAL AND AMENDING PETITION FOR DAMAGES" naming, State National Insurance Company, as a defendant pursuant to the Louisiana Direct Action Statute. *La.Rev.St. 22:1269.* SNIC filed an answer to the plaintiff's original and supplemental and amending petitions on October 25, 2010 pleading its policy generally, and denying Plaintiff's allegations.

Plaintiff, James Milstead, was employed by Total Wireline Services as a general laborer.[1] Total Wireline Services works on oilfield facilities, including those in inland waters. Mr. Milstead worked on vessels "from time to time."[2] Mr. Milstead occasionally performed wireline work for Total Wireline in addition to his primary duties working in the shop.[3] There is no testimony that Mr. Milstead spent his evenings on a vessel as either a roustabout or a wireline operator in training, or that he ate meals on a vessel, or that he was a member of any vessel's crew whose job furthered the mission of the vessel.

## LAW & ARGUMENT

1. **The Standard for Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law."[4] The party seeking summary judgment has the initial responsibility of informing the Court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact.[5] The moving

---

[1] Deposition of Perry Perrin, p. 8, ll 13-14 Exhibit 1

[2] Id., p. 9, ll 12-14

[3] Deposition of Tobey Boudreaux, p. 25, ll 10-14 Exhibit 2

[4] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553 (1996).

party need not produce evidence negating the existence of every material fact, but need only point out the absence of the evidence supporting the non-moving party's case.[6]

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.[7] In order to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[8] Rule 56(d) of the Federal Rules of Civil Procedure, requires the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[9]

Although seaman status is a mixed question of law and fact, summary judgment is mandated where the facts and law will reasonably support one conclusion.[10] Seaman status can be decided as a matter of law where the facts show beyond question the lack of seaman status.[11]

2. **A Blueprint for Seaman Status**

The remedies reserved for "seamen" are exclusive. The word "seaman" is a maritime term of art, which is not defined in the Jones Act, which was passed by the United States Congress in 1920.[12] Congress has left defining the status of a maritime worker to the courts.

---

[6] *Latimer v. Smith Cline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990); *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct.1348, 1355 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2514 (1986).

[8] *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356.

[9] *Anderson*, 477 U.S. 256, 106 S.Ct. 2514.

[10] *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 813 (1991).

[11] *Garret v. Dean Shank Drilling Co., Inc.* 799 F.2d 1007, 1009 (5th Cir. 1986); *Reynolds v. Ingalls Shipping*, 788 F.2d 264, 267 (5th Cir. 1986); *Barret v. Chevron USA*, 781 F.2d 1067, 1074 (5th Cir. 1986).

[12] See generally, 46 U.S.C.A. § 688 et seq.

Seven years after the passing of the Jones Act, in 1927, Congress enacted the Longshore Harbors Workers' Compensation Act ("LHWCA"), which provided a compensation scheme of recovery to land-based maritime workers. "A master or member of a crew of any vessel" was, and is, specifically excluded from coverage under the LHWCA.[13] Therefore, with the establishment of the LHWCA came the first refinement of what it meant to be a seaman. As noted by the U.S. Supreme Court, "it is odd but true that the key requirement for Jones Act coverage now appears in another statute."[14] The task of defining "seaman," and thereby separating those workers covered by the LHWCA, from those workers covered by the Jones Act, fell to the courts of the United States. The lower courts were inevitably split on the requirements of seaman status. As a result, the United States Supreme Court, in a series of cases, crafted a blueprint for determining whether a maritime worker is a seaman under the Jones Act, and therefore entitled to specific remedies under the Maritime law. The well-established U.S. Supreme Court rule on seaman status was first found in *McDermott International v. Wilander*,[15] and further refined in *Chandris, Inc. v. Latsis*[16] and *Harbor Tug and Barge Company v. Papai*[17].

    a.    **Employment Related Connection**

In *McDermott International v. Wilander*, the United States Supreme Court adopted the reasoning of the Fifth Circuit in *Offshore Co. v. Robison*.[18] The Fifth Circuit defined a seaman as

---

[13] 33 U.S.C.A. §902(3)(G).

[14] *Wilander*, 498 U.S. at 347, 111 S.Ct. at 813.

[15] 498 U.S. 337, 111 S.Ct. 807, (1991).

[16] 515 U.S. 347, 115 S.Ct. 2172, (1995).

[17] *Harbor Tug and Barge Company v. Papai*, 520 U.S. 548, 117 S.Ct.1535, (1997).

[18] *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959).

one who: (1) has a more or less permanent connection with, or performs a substantial part of his work aboard; (2) a vessel in navigation; and (3) is aboard the vessel primarily in aid of navigation, or in aid of the special mission of the vessel.[19] *Wilander* explained that "the key to seaman status is employment-related connection to a vessel in navigation."[20] The U.S. Supreme Court held that a necessary element of the connection is that the seaman performs the work of the vessel.[21]

In *Chandris, Inc. v. Latsis*, the U.S. Supreme Court clarified the meaning of an "employment-related connection" crafted by the *Wilander* decision.[22] The Court held that the precise relationship a maritime worker must have with a vessel in order to qualify for Jones Act coverage has two essential requirements:

> (1) An employee's duties must contribute to the function of the *vessel* or to the accomplishment of its mission; and
>
> (2) The employee must have an employment-related connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and nature.[23]

The key to seaman status is an employment related connection to a vessel in navigation, or an identifiable group of such vessels, without which there can be no Jones Act coverage.[24]

---

[19] *Id.*

[20] *Wilander*, 498 U.S. 337, 354, 111 S.Ct., 807, 817.

[21] *Id.* at 498 U.S. 337, 355, 111 S.Ct. 807, 817.

[22] *Chandris*, 515 U.S. 347, 349, 115 S.Ct. 2172, 2181 (1995).

[23] *Id* at 376, 115 S.Ct. at 2194.

[24] *Garrett v. Dean Shank Drilling Company, Inc.*, 799 F.2d 1007, 1010 (5th Cir. 1986).

A similar case to the one at bar was decided in the Eastern District of Louisiana by Judge Carl Barbier involving an employee who was a welder: *Terry Ausama v. Tetra Applied Technologies, LP et al.*[25] Ausama's work was exclusively that of either installing or salvaging platforms, and he would perform most of his work on a platform.[26] In addition, Ausama testified that he would perform some maintenance work on the vessel, or some work on the vessel when the weather was bad.[27] Ausama did eat and sleep aboard the vessel. This, however, was not enough to confer seaman status.[28]

While some of Milstead's work may have been performed on a vessel, there is substantial evidence that Plaintiff's work was performed either on an oil rig or in the shoreside yard. Accordingly, the work performed on the vessel was not critical to the mission of the vessel, as the actual job plaintiff performed was not aboard a vessel. Plaintiff did not eat or sleep aboard the vessel.

### b. Plaintiff Does Not Have a Substantial Employment Related Connection to a Vessel in Navigation

Plaintiff can not satisfy the seaman status test because he does not have a substantial *employment* related connection to a vessel in navigation. Mr. Milstead's work during his tenure with Total Wireline Services was performed either fortuitously on a vessel, but primarily on the well itself or preferably in the shoreside yard.[29]

---

[25] 2006 WL 1968858, attached as Exhibit 3.

[26] *Ausama* at 3.

[27] *Id.*

[28] *See also Hufnagel v. Omega Serv. Indus.*, 182 F.2d 340 (5th Cir. 1999); *St. Romaine v. Indust. Fabrication & Repair Serv.*, 203 F.3d 376 (5th Cir. 2000); and *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir 1980).

[29] Deposition of Tobey Boudreaux p 25, ll 22-25 attached as Exhibit 2

In *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, (5th Cir. 1980), the Fifth Circuit found that a floor hand who was injured aboard a tender anchored adjacent to a fixed drilling platform was not a seaman. Plaintiff-Longmire was employed as a floor hand and rigger whose primary duties were on the drilling platform. The platform was supported by a tender, which provided crew quarters, mess facilities, and pumps, electricity and fuel necessary to operate the drill. Although the majority of Longmire's duties were performed on the platform, on occasion he would perform duties on the tender, such as maintenance work, or the moving of supplies from the tender to the platform, loading and unloading of supply boats, and the fixing of pumps for the drilling operation. On the day of plaintiff-Longmire's accident, however, he had worked on the tender stowing anchor chains.

Longmire argued that he was a seaman. However, by his own admission, Longmire had stated that his primary duties were performed on the platform, and that his duties on board the tender were incidental thereto. The Fifth Circuit found that Longmire, even though injured on the tender while performing a task usually reserved for a member of a crew, was not a seaman.

> "Longmire's primary responsibilities concerned drilling operations on the platform. Because of the symbiotic relationship between the tender and the drilling platform in this case, Longmire's performance of those duties necessarily carried him onto the tender from time to time. In this regard the vessel was no more than a storeroom or warehouse in relation to the drilling platform, except for the fact that it was afloat rather than affixed to the seabed Longmire's work on the tender also occasionally involved general maintenance tasks, such as cleaning and painting. These tasks aboard the tender, however, were assigned to Longmire and others on the drilling crew only when there was nothing to do with respect to the drilling operation. Longmire's assignment to those tasks were irregular and fortuitous, entirely dependent upon the subsidiary to the progress of the drilling operation."[30]

---

[30] 610 F.2d at 1346 - 47.

7

Plaintiff's primary duties, like Longmire's, concerned wirelining on the various oil rigs, or caring for the shoreside yard. Fifth Circuit jurisprudence has consistently held that wireline services are non-maritime in nature.[31] Furthermore, Plaintiff testified that he was only on the vessel to do work from it, and it was spudded down and functioned as a work platform.[32] Consequently, Plaintiff's wireline work, whether performed on a vessel or not, is not considered traditional maritime activity.

When reviewing the testimony of plaintiff in the instant matter, it is clear that any actions done by Plaintiff onboard the vessel were not his primary duties, but rather merely incidental to his employment. Additionally, there is no indication that Plaintiff spent a substantial amount of his time employed with Total Wireline on a vessel, but rather was in the yard on shore, cleaning up the building or performing other incidental tasks working for Ascent.[33] Much like the Plaintiff in *Longmire*, Milstead's maintenance work onboard the vessel was assigned when work was not being performed on land or in the yard.

Plaintiff's connection to a vessel or fleet of vessels is tenuous at best. Neither Plaintiff, nor his co-worker Tobey Boudreaux, could remember which vessels they had worked on, or for what period of time. According to Mr. Boudreaux, "It was kind of hard to keep track of, you know, what you was going to do or what you wasn't." Longmire would arguably have a stronger connection to the tender, than plaintiff would have to a vessel, but the Fifth Circuit declined to extend seaman

---

[31] *Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir 1988).

[32] Deposition of James Milstead p. 58- 59. Exhibit 4

[33] "[Plaintiff] stayed working with Perry doing wireline. Then he came back home. Then I think he went to work at the Golden Meadow shop, and then went to work for Ascent." Deposition of Tobey Boudreaux p. 25, ll 7-10 Exhibit 2

status to Longmire, and found that he did not have the requisite employment related connection to a vessel in navigation that was substantial in terms of its duration and nature.

Plaintiff, James Milstead, does not have an <u>employment related</u> connection to a vessel or to an identifiable fleet of vessels, and is not a Jones Act seaman. Accordingly, his Jones Act claims against Defendant , must be dismissed with prejudice.

## CONCLUSION

SNIC respectfully requests that this Honorable Court grant its Motion for Summary Judgment on seaman status and find that the plaintiff is not a seaman within the meaning of the Jones Act because he does not have an employment related connection to a vessel in navigation that is substantial in terms of its nature.

Respectfully submitted,

*S/EMMA A. MEKINDA*
RICHARD A. COZAD, T.A. (LSB #4537)
MICHAEL L. McALPINE (LSB #9195)
EMMA MEKINDA (LSB #28151)
365 Canal Street, Suite 3180
New Orleans, LA 70130
Tel. (504) 561-0323 / Fax (504) 528-9442
*Attorneys for State National Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a the foregoing document was filed with the Clerk of Court on July 1, 2011, and is available for viewing and downloading from the CM/ECF system. Notice of Electronic Case Filing has been sent automatically to all counsel on the e-mail service list. Any counsel not included on the e-mail service list received a copy via United States Mail.

S/EMMA A.MEKINDA

Doc. #110455.1

Case 2:09-cv-06301-MLCF-KWR   Document 64-1   Filed 07/01/11   Page 10 of 10